H. E. PENDRY, *Appellant,* V. J. N. EDGAR et al., as the
School Board of District No. 35, *Appellees.*

No. 18,237.

### SYLLABUS BY THE COURT.

MANDAMUS—*Uniform Textbooks—Primary Reading Chart.* The
uniform textbook law authorizes the state textbook commis-
sion to adopt a series of textbooks in various specified
branches, including a primary reading chart. Standards of
quality are prescribed, maximum prices are fixed, and pro-
visions are made for letting contracts upon competitive bids
for supplying the textbooks named in the list—but a maxi-
mum price is not fixed for a primary reading chart. The
statute also declares that "It shall be unlawful for any school-
district board . . . to purchase or contract for any chart,
map, globe, or other school apparatus . . . unless the
same shall have been . . . approved, and a maximum
price therefor fixed by said school textbook commission."
(Gen. Stat. 1909, § 7836.) It is held (1) that the Arnett
primary reading chart, described in the petition, is intended
and adapted for class instruction and not for individual use
by pupils as an ordinary textbook, and (2) that a school-
district board will not be compelled by mandamus to buy or
install a primary reading chart for class instruction in a
district school and pay to the manufacturer the maximum
price fixed therefor by the textbook commission, although the
commission has adopted the chart for use in the public schools.

Appeal from Shawnee district court, division No. 2.
Opinion filed December 7, 1912. Affirmed. Opinion on
rehearing filed February 8, 1913. (See page 833.) Re-
affirmed.

*Robert Stone, George T. McDermott, Hugh T.
Fisher,* and *Maurice O. Lock,* all of Topeka, for the ap-
pellant.

*Edwin D. McKeever,* of Topeka, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an action in mandamus to
compel the defendant school board to install a primary
reading chart in the district school and to pay the
plaintiff $12 therefor.

It is alleged that the state textbook commission, in pursuance of the uniform textbook law, has adopted the Arnett primary reading chart for use in the public schools and also "adopted the price therefor of $12 per chart." It is further alleged "that said chart is filed and prescribed . . . for use by a class and not for individual pupils, for class instruction and not for individual study. . . . That . . . plaintiff . . . purchased from Anna W. Arnett, the holder, this contract with the state to supply Arnett primary reading charts to the public schools of Kansas." There is, however, no allegation of the execution of a contract, unless the adoption of the chart and the price should be construed as a contract. It is also alleged that the plaintiff is the manufacturer of the article in question, which is described in plaintiff's brief as a large chart supported on an iron stand with large characters that can be read across a room.

The petition contains averments that the district has pupils for instruction in the primary course of reading, writing and orthography, and until a short time before this suit had used a similar chart. A demand by the plaintiff and refusal by the board to purchase one of the charts is also alleged.

On this appeal from an order quashing the alternative writ the only question is whether the school board should be compelled by mandamus to install one of these charts and pay the plaintiff $12 therefor.

The statute authorizes the textbook commission to adopt a uniform series of school textbooks in the following branches:

"A primer, a primary reading chart, and a graded series of drawing books or drawing portfolios, geometry, . . . Latin grammar, Latin exercises, Cæsar, Cicero, Virgil, general history, history of Kansas, English history, rhetoric, English literature, botany, zoölogy, chemistry, word analysis, geology, German exercises, German grammar, and descriptive astronomy." (Gen. Stat. 1909, § 7833.)

This provision is followed by others prescribing standards of quality and maximum prices for the books named, but primary reading charts are omitted from the regulations concerning maximum prices. Other sections relate° to bids and contracts for such books to be furnished to the patrons of the schools at prices fixed by contracts awarded upon competitive bids.

Another section of the statute following those just referred to provides:

"It shall be unlawful for any school-district board or board of education of any city of the first or second class to purchase or contract for any chart, map, globe, or other school apparatus, except scientific apparatus for high schools, unless the same shall have been submitted to the school textbook commission at a regular or special session, and by them approved, and a maximum price therefor fixed by said school textbook commission." (Gen. Stat. 1909, § 7836.)

While a reading chart is included among textbooks in the section first quoted, it is manifest from the nature of the article that it is not intended for individual purchase and use as an ordinary textbook. This distinction is not only apparent from its adaptation to class instruction rather than individual use by pupils, but is recognized in its omission from the regulations prescribing maximum prices which apply to books to be purchased by patrons of the schools under contracts awarded by the commission. It will also be observed that charts are classified with maps, globes, and other school apparatus, and can only be purchased when approved by the commission and a maximum price is fixed therefor.

It seems from all these provisions that books which are to be purchased by patrons for individual use are the subject of competitive bidding and contract, and that approved charts may be purchased by school boards when a maximum price has been fixed therefor.

No statutory provision is found compelling the pur-

Pendry v. Edgar.

chase of charts, maps, globes or other apparatus from any particular dealer or manufacturer, nor the payment of the maximum prices. The use of the term maximum implies a right to purchase for less if that can be done. In obtaining supplies of ordinary textbooks, the maximum price is a statutory limitation. The price, not exceeding this maximum, is fixed by the contract. (Gen. Stat. 1909, § 7834.)

We do not understand that the textbook commission has entered into any contract to supply charts under the provisions of the statute regulating the purchase of ordinary textbooks for individual use, but has merely adopted this chart and fixed the maximum price as authorized by statute.

If this chart is to be treated as an ordinary textbook it should be the subject of contract by the textbook commission and sale to patrons as a reader or speller is treated. Considered in the classification with maps, globes and other apparatus, such a contract is not authorized. In either case the court has no authority to compel a school board to buy or install this chart in the public school and to pay the manufacturer the maximum price therefor.

The judgment is affirmed.

---

## OPINION ON REHEARING.

### SYLLABUS BY THE COURT.

MANDAMUS—*Uniform Textbooks—Primary Reading Chart.* A contract entered into between the school textbook commission and the author of a primary reading chart to supply the needs of the state for such chart does not compel a school district board to purchase one of the charts for use in the district school.

The opinion of the court was delivered by

BENSON, J.: In a petition for rehearing it is stated that the school textbook commission entered into a contract with the author of the chart in question as

provided in case of adopted textbooks. (Gen. Stat. 1909, §§ 7814, 7815, 7824, 7836.) From a copy of the contract, set out in the petition for rehearing, it appears that the commission adopted the charts at the price of $12, and the author agreed to place such charts "in the hands of the state depository in sufficient quantities to supply the then needs of the state," and to fulfill the terms of her offer submitted to the commission. The existence of the contract being conceded, it appears that the former opinion was based in part upon a misapprehension of facts, for it was said in the opinion: "We do not understand that the textbook commission has entered into any contract to supply charts." (Ante, p. 833.) The question, therefore, remains whether the contract imposes the duty upon the district to purchase the chart of the appellant at the price adopted by the commission. While the article in question is scheduled with textbooks to be adopted, no provision is found for adopting a price unless it be the price specified in an accepted bid. In the case of the textbooks specified in the schedule such price can not exceed the maximum price named in the statute. But no maximum price is prescribed for a primary reading chart. Whether the textbook commission has authority to adopt a price and make a contract to supply such charts may be the subject of divergent opinions, but it is not found necessary to decide that question. A contract in the case of ordinary textbooks certainly does not impose any duty upon a district board to purchase them unless it be in a case of district ownership, provided for in the statute (Gen. Stat. 1909, § 7822), but not adopted by this district. Treated as textbooks, with which it is classified in the statute, except as to maximum prices, purchases would be made by patrons of the school and not by the district. Appellant disclaims any right to compel such purchase under the section of the statute relating to charts, maps, globes and other school apparatus. (Gen. Stat. 1909, § 7836.)

With or without the contract no provision of law is found requiring district boards to buy the chart of the manufacturer and pay the price demanded therefor.

In the former opinion reference was made to the omission of a reading chart from the regulations prescribing standards of quality and maximum prices in the statute authorizing the adoption of textbooks. A standard is provided, viz., Wooster's primary reading chart (Gen. Stat. 1909, § 7833), but a maximum price is omitted. A necessary correction is made accordingly in the opinion, but the conclusion is adhered to.